IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

JACOB SALAZAR,

      Plaintiff,

v.     No.

AT&T MOBILITY, LLC,
CREDENCE RESOURCE MANAGEMENT, LLC,
EXPERIAN INFORMATION SOLUTIONS, INC., and
TRANS UNION LLC,

      Defendants.

## COMPLAINT FOR DAMAGES AND JURY DEMAND

1. Defendant AT&T tricked Plaintiff Jacob Salazar into signing up for cellphone service by falsely promising low monthly rates and other incentives. When AT&T failed to live up to its promises, Mr. Salazar refused to pay. AT&T sent Mr. Salazar's account to Defendant Credence, a collection agency, which harassed him and damaged his credit.

2. Mr. Salazar properly disputed the false credit reports to Defendants Experian and Trans Union, two credit reporting agencies. Experian, Trans Union, and Credence refused to correct the false reporting, despite being provided with indisputable evidence supporting Mr. Salazar's position.

3. Mr. Salazar brings claims against Defendants for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the New Mexico Unfair Practices Act ("UPA"), NMSA § 57-12-1 *et seq.,* and for fraud, tortious breach of contract, and tortious debt collection.

**Parties, Jurisdiction and Venue**

4. Mr. Salazar is an individual residing in Albuquerque, New Mexico. He is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c). He is a "consumer" as defined by 15 U.S.C. §1692a(3).

5. AT&T Mobility, LLC, ("AT&T") is a foreign limited liability company. AT&T enters into cellphone service agreements with consumers in New Mexico. AT&T's transaction with Mr. Salazar, described herein, occurred in the regular course of AT&T's trade or commerce.

6. Credence Resource Management, LLC, ("Credence") is a foreign limited liability company. Credence is a debt collector that pursues New Mexico consumers with allegedly past due accounts on behalf of AT&T. Credence is a is a "furnisher of information" as defined by the FCRA, 15 U.S.C. §§ 1681s-2(a) and (b). Credence regularly and in the ordinary course of its business furnishes information to one or more consumer reporting agencies about its consumer transactions. Credence is a "debt collector," as defined by 15 U.S.C. § 1692a(6), because it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

7. Experian Information Solutions, Inc. ("Experian") is a foreign corporation. Experian operates nationwide as a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f). Experian assembles or evaluates consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties and uses means of interstate commerce for the purpose of preparing or furnishing consumer reports.

8. Trans Union, LLC ("Trans Union") is a foreign limited liability company. Trans Union operates nationwide as a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

       Trans Union assembles or evaluates consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties and uses means of interstate commerce for the purpose of preparing or furnishing consumer reports.

9. This Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p; the FDCPA, 15 U.S.C. § 1692k(d); and under 28 U.S.C. §§ 1331 and 1337.  This Court has supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this complaint occurred within the district.

**Facts**

11. On or about March 27, 2019, an AT&T representative named Paula Gaitan went to Mr. Salazar's home to solicit him to change his wireless service from Sprint to AT&T.

12. Mr. Salazar asked Ms. Gaitan the price of AT&T's service for three phones and three lines.

13. Ms. Gaitan stated that the monthly bill would be $145.42.

14. Mr. Salazar requested written confirmation of the agreement.

15. The same day, Ms. Gaitan sent Mr. Salazar an e-mail confirming that the price would be $145.42.

16. Ms. Gaitan also promised that AT&T would pay Mr. Salazar's last Sprint bill of $422, and took the iPhones Mr. Salazar had used with his Sprint plan.

17. Finally, Ms. Gaitan promised that AT&T would provide Mr. Salazar with a router to improve the service in his home.

18. AT&T did not enter into any written agreement with Mr. Salazar for its services.

19. Although the transaction qualified as a "door-to-door sale" pursuant to the UPA, NMSA § 57-12-21(c)(3), AT&T failed to comply with the requirements of New Mexico law,

including furnishing Mr. Salazar with a copy of any agreement and notice of the right to cancel.

20. Based on Ms. Gaitan's representations, Mr. Salazar agreed to switch his service to AT&T.

21. On April 22, 2019, AT&T sent Mr. Salazar a bill for $114.32. Mr. Salazar paid it.

22. On May 4, 2019, AT&T sent Mr. Salazar another bill, this time for $217.67.

23. AT&T also failed to pay off Mr. Salazar's last Sprint bill or provide him with the router it had promised.

24. Mr. Salazar contacted AT&T both over the phone and in writing.

25. AT&T stated that it would not honor the $145.42 price, and that Mr. Salazar was obligated to pay the billed amount.

26. AT&T stated that it would pay the Sprint bill, but failed to do so.

27. AT&T failed to provide the router.

28. AT&T continued billing Mr. Salazar for amounts significantly above the amount it had agreed upon.

29. Based on AT&T's breach of its agreement, Mr. Salazar refused to pay and switched his cell phone service to T-Mobile.

30. AT&T hired Credence to collect on Mr. Salazar's account, despite the fact that it knew Mr. Salazar did not owe the amounts it was claiming.

31. Credence sent collection letters to Mr. Salazar claiming that he owed $3,388.64 for his AT&T bill.

32. Credence also reported the AT&T account to Experian and Trans Union as "in collections" with a balance of $3,388.64.

33. On December 27, 2019, Mr. Salazar sent dispute letters to Experian and Trans Union, disputing Credence's negative and false reporting of his debt to AT&T, and asked Experian and Trans Union to conduct a reinvestigation, pursuant to 15 U.S.C. § 1681i(a).

34. Mr. Salazar enclosed with his dispute letters proof that AT&T had agreed to $145.42 per month payments, to pay the Sprint bill, and to provide a router.

35. Experian and Trans Union received the dispute letters and provided Credence with Mr. Salazar's dispute.

36. Experian, Trans Union and Credence all willfully failed to conduct a reasonable reinvestigation, as required by the FCRA, 15 U.S.C. § 1681i(a) and 1681s-2(b).

37. In the alternative, Defendants all negligently failed to conduct a reasonable reinvestigation, as required by the FCRA, 15 U.S.C. § 1681i(a) and 1681s-2(b).

38. Credence verified as accurate to Experian and Trans Union that Mr. Salazar owed $3,388.64, which was a willful, and malicious misrepresentation.

39. Credence continued to make derogatory reports to Experian and Trans Union, and Experian and Trans Union continued to include this false information in Mr. Salazar's consumer reports.

40. AT&T continued its efforts to collect from Mr. Salazar, eventually hiring another debt collector, Sequium Asset Solutions, LLC.

41. Sequium also began reporting the false debt to Mr. Salazar's credit reports.

42. Mr. Salazar faces irreparable injury should AT&T and its debt collectors continue pursuing Mr. Salazar for the debt, harassing him, threatening his finances, and harming his credit.

43. Mr. Salazar was damaged by Defendants' misconduct.

44. As a result of the false information on his credit report, Mr. Salazar was forced to pay a higher interest rate for a car loan than he otherwise would have paid.

45. Also as a result of Defendants' conduct, Mr. Salazar was unable to refinance his home, resulting in significantly higher monthly payments.

46. Mr. Salazar also lost time and incurred various out of pocket expenses.

47. Defendants' conduct caused aggravation, frustration, humiliation, and other emotional distress to Mr. Salazar.

48. Defendants' conduct was malicious, willful, reckless, wanton, fraudulent, and in bad faith.

49. Upon information and belief, Defendants' actions are part of a pattern of similar misconduct, justifying an award of punitive damages.

## Jury Demand

50. Plaintiff hereby demands trial by a six-person jury on all issues so triable.

## First Claim for Relief: Violations of the FCRA by Experian and Trans Union

51. Experian and Trans Union failed to maintain reasonable procedures to ensure the maximum possible accuracy of the consumer credit information it reported concerning Mr. Salazar.

52. Experian and Trans Union:

    A. failed to review and consider all relevant information submitted by Mr. Salazar in connection with his disputes;

    B. failed to provide Credence with all relevant information provided by Mr. Salazar;

    C. failed to conduct a genuine and reasonable reinvestigation in response to Mr. Salazar's dispute;

    D. persisted in reporting information that they knew or should have known to be inaccurate and damaging; and

6

  E. failed to delete inaccurate information from Mr. Salazar's credit report.

53. The actions and inactions of the credit reporting agencies were willful, and in the alternative, negligent violations of the FCRA, including 15 U.S.C. §§ 1681e and 1681i.

54. Mr. Salazar is entitled to actual, statutory damages, punitive damages, costs and reasonable attorney's fees.

### Second Claim for Relief: Violations of the FCRA by Credence

55. Credence failed to review and consider all relevant information submitted by Mr. Salazar.

56. Credence failed to conduct a genuine and reasonable reinvestigation in response to Mr. Salazar's disputes.

57. Credence failed to report to Experian and Trans Union that the information it reported about the account is inaccurate.

58. Credence persisted in reporting information that it knew or should have known to be inaccurate and damaging.

59. Credence's actions are willful or, in the alternative, negligent, violations of the FCRA, including 15 U.S.C. § 1681s-2(b).

60. Mr. Salazar is entitled to actual damages, statutory damages and punitive damages, costs and reasonable attorney fees.

### Third Claim for Relief: Violations of the Unfair Practices Act by AT&T and Credence

61. The foregoing transaction occurred in the regular course of Defendants AT&T and Credence's trade or commerce, and their actions are subject to the New Mexico Unfair Practices Act ("UPA").

62. The foregoing actions of Defendants constitute unfair or deceptive trade practices, within the meaning of the UPA, NMSA §57-12-2.

63. Defendants willfully engaged in these unlawful trade practices.

64. As a result of Defendants' violations of the UPA, Mr. Salazar is entitled to recover actual or statutory damages, trebled, plus costs and reasonable attorney's fees.

65. Mr. Salazar is also entitled to an injunction barring AT&T and Credence from continuing to collect on the alleged debt, including making derogatory reports to his credit.

### Fourth Claim for Relief: Fraud by AT&T

66. Defendant AT&T induced Plaintiff to enter into a cell phone service agreement by misrepresentations and by omissions of material facts, as set forth above, including stating that the price of the contract would be $145.42 per month, that AT&T would pay Mr. Salazar's last bill with his previous provider, and that AT&T would provide Mr. Salazar with a router.

67. Defendant knew such representations to be false, or it made those representations recklessly, or it had no reasonable grounds for believing those representations were true. Defendant also knew that its omissions were material and important.

68. Defendant intended to deceive Plaintiff and intended that he would rely upon its representations, which he did, to his detriment, suffering damages.

### Fifth Claim for Relief: Tortious Breach of Contract

69. AT&T's actions constitute a breach of its contract with Mr. Salazar.

70. AT&T's breach was willful and constituted a breach of the covenant of good faith and fair dealing.

71. Mr. Salazar is entitled to actual damages and punitive damages.

### Sixth Claim for Relief: Tortious Debt Collection

72. AT&T and Credence's actions constitute unreasonable and tortious debt collection practices in violation of the doctrine enunciated by the New Mexico Supreme Court in *Montgomery Ward v. Larragoite*, 81 N.M. 383, 467 P.2d 399 (1970).

73. Plaintiff is entitled to recover actual damages and punitive damages.

### Seventh Claim for Relief: Violation of the Fair Debt Collection Practices Act by Credence

74. The foregoing actions of Defendant Credence violated the FDCPA, including 15 U.S.C. §§ 1692d, 1692e, and 1692f.

75. Plaintiff and the class are entitled to recover damages, costs and reasonable attorney fees. 15 U.S.C. § 1692k.

WHEREFORE, Plaintiff prays that this Court:

    A.    Award actual, statutory, and punitive damages as set forth herein;

    B.    Provide injunctive relief as set forth herein;

    C.    Order declaratory relief that Mr. Salazar owes nothing to AT&T or its collection agencies;

    D.    Award costs and attorney's fees; and

    E.    Award such other relief as this Court deems just.

Respectfully submitted,

FEFERMAN, WARREN & MATTISON

*/s/ Nicholas H. Mattison*
Nicholas H. Mattison
Attorneys for Plaintiff

300 Central Avenue S.W., Suite 2000 West
Albuquerque, N.M. 87102
(505) 243-7773
(505) 243-6663 fax
nmattison@nmconsumerwarriors.com
Attorneys for Plaintiff